UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------- x
                                                                  :

UNITED STATES OF AMERICA,               :

                                                                  :      15 Cr. 592 (PKC)
        - against –                                :

ESMERALDO ACOSTA,                          :

                Defendant.                      :
------------------------------------------- x


# MEMORANDUM OF ESMERALDO ACOSTA
# IN CONNECTION WITH MAY 19, 2016 SENTENCING


**SULLIVAN & WORCESTER LLP**

1633 Broadway
New York, New York 10019
Telephone: (212) 660-3000
Facsimile: (212) 660-3001

*Attorneys for Esmeraldo Acosta*

# **TABLE OF CONTENTS**

OBJECTIONS TO PRESENTENCE REPORT ................................................................................ 1

STATEMENT OF FACTS ............................................................................................................. 1

I.   HISTORY AND CHARACTERISTICS OF MR. ACOSTA ................................................. 1

    A.   Personal Background ............................................................................................... 1

    B.   Education and Employment History ........................................................................ 2

    C.   Letters of Support .................................................................................................... 3

II.  NATURE AND CIRCUMSTANCES OF THE OFFENSE .................................................... 4

III. SENTENCING CALCULATIONS AND GUIDELINES ...................................................... 6

ARGUMENT ................................................................................................................................. 6

Mr. Acosta's Explanation for Offense .......................................................................................... 7

Mr. Acosta's Age .......................................................................................................................... 8

CONCLUSION ............................................................................................................................ 10

APPENDIX .................................................................................................................................. 11

## OBJECTIONS TO PRESENTENCE REPORT

Esmeraldo Acosta seeks the Court's consideration of two objections to the Presentence Investigation Report, dated as modified as of April 25, 2016 (the "Report"), that previously were raised with the Probation Office, neither one of which affects sentencing calculations. Mr. Acosta was born in 1965, not in 1964. *See* Report ¶ 48. Mr. Acosta objects to paragraphs 9 through and including 23 of the Report to the extent that these paragraphs (a) recite facts outside of those set forth by Mr. Acosta during his guilty plea allocution on February 4, 2016; (b) concern conduct -- involving other individuals -- of which Mr. Acosta is unaware and lacks personal knowledge; and (c) rely on and/or are supported by information and materials relating to his co-defendant that have not been made available to Mr. Acosta.

## STATEMENT OF FACTS

I. **HISTORY AND CHARACTERISTICS OF MR. ACOSTA**

   A. **Personal Background**

Mr. Acosta, who is now 51 years old, was born in Santiago, Dominican Republic in January of 1965. *See* Report Cover Sheet. His parents, both of whom maintained employment, were married. *See id.* ¶¶ 48-49. Mr. Acosta's father died from cancer approximately 35 years ago. *See id.* ¶ 48. Mr. Acosta's mother died approximately 18 years ago. *See id.* Mr. Acosta has four living siblings, all of whom live in the Dominican Republic. *See id.* Mr. Acosta has a "good" relationship with his family and described his childhood as "good," with adequate food, shelter and clothing. *Id.* ¶¶ 48-49.

Mr. Acosta has two children: a daughter Elizabeth (24 years old) who works and a son Justin (21 years old) who is attending college. *See id.* ¶ 51. He speaks with his son every day, but has a more distant relationship with his daughter, "as he was disappointed to learn that she had ceased her schooling." *Id.* Mr. Acosta noted that he has not allowed his children to visit him

since his arrest because "the idea of them visiting him while incarcerated, and then leaving at the end of the session, is too painful." *Id*.  From in or about 1993 until the time of his arrest in 2015, Mr. Acosta primarily resided with his family at one location in the Bronx.  *See id.* ¶ 52.

### B. Education and Employment History

In 1982, Mr. Acosta obtained his high school diploma.  *See id.* ¶ 60.  In 2007, Mr. Acosta obtained a Class A Commercial Driver License.  *See id*. ¶ 61.

Prior to his incarceration, Mr. Acosta maintained a long history of gainful employment and earned a reputation as a loyal and diligent individual who worked hard to support his family. As he has noted in his letter to the Court, "I have always worked in the US."  Ex. A.[1]  From the 1990's until 2004, Mr. Acosta's work "consisted of performing construction and car mechanical work."  Report ¶ 65.  He also parked cars and sold CDs.  *See* Ex. A.  In or about 2004, Mr. Acosta opened his own trucking business, which operated successfully for several years until 2007 when it sustained financial difficulties.  *See* Report ¶ 64.  From 2007 until his 2015 arrest, Mr. Acosta worked for a trucking company.  *See id*. ¶ 63.

Since his July 2015 incarceration in connection with this offense, Mr. Acosta has maintained and excelled with employment.  At the MCC, shortly after his arrest, Mr. Acosta began to work in food service.  In every month, his Work Performance Ratings confirm that the quality of his work, the quantity of his work, his initiative and his eagerness to learn were good; that he learned quickly and needed little supervision; and that he should be promoted "to a more demanding job at a higher pay rate."  *See* Ex. G.  For his work, he received a bonus -- in addition to his compensation -- in at least two months.  *See id*.

---

[1] Eight exhibits are attached to this Memorandum.  An Appendix listing the exhibits appears at the end of the Memorandum.

2

More recently, following his transfer to the MDC, Mr. Acosta has continued to work in food service, receiving "Outstanding" rankings in every category where possible. Moreover, he has been described as following: "Very hard and respectable worker. Works well with others. No need to train much. Great work." Ex. H; *see also* Report ¶ 62.

C. **Letters of Support**

Mr. Acosta maintains a close relationship with his family, as reflected by the sentiment expressed in the letters submitted on his behalf. He is particularly close to his son, nieces and nephew, all of whom emphasize Mr. Acosta's dedication to his family; emphasis on education; and belief in the importance of leading a positive lifestyle for a bright future. *See* Report ¶ 53. They noted that "they have been encouraged and motivated by [Mr.] Acosta to continuously progress positively in their lives." *Id.* ¶ 53. Indeed, the letters from Mr. Acosta's family make clear that Mr. Acosta will be fortunate to rely upon a strong system of support when he is released from prison. *See* Exs. B-F.

Mr. Acosta's son Justin writes that "my dad's parenting was driven out of love and guidance . . . I need my father in my life to continue guiding me in everyday life struggles. I feel lost without my father." Ex. B. Gissell Acosta, Mr. Acosta's niece, writes about the paternal role that Esmeraldo Acosta assumed for her and her siblings following their own father's death: "He encouraged us to be involved in extracurricular activities in school and always monitored our education. He was like our father." Ex. C. She describes how Mr. Acosta has guided her and her siblings in a positive direction. *Id*.

Gissell Acosta also writes about Mr. Acosta's generosity with others, recounting a time when "he had $100.00 in his pocket that w[as] supposed to last until his next paycheck and his friend asked him if he could have $50 to buy food for his house because he was low on money. . . . My uncle gave him $50.00 and when we were alone, I asked him why? He said it was the

3

right thing to do." Ms. Acosta admits that Esmeraldo Acosta made a mistake, but she writes that "The situation reminds me of a quote I read years ago: 'He gave his life to teach his kids how to swim that he forgot to teach himself and drowned.' My uncle ended up drowning in the same situation he fought for the past 14 years to keep us shielded from." Ex. C.

Maximo Acosta, Mr. Acosta's nephew, views Acosta as "father figure" from whom he "learned respect, discipline, structure and balance" and a work ethic. Ex. E. Viviana Acosta, a sister-in-law, writes that Mr. Acosta has provided love, financial and emotional support and parental guidance to the family. *See* Ex. F.

Ivanova Acosta, a social worker with the state of Connecticut and another niece, writes: "I wouldn't be where I am today without his guidance and support. . . . My family and I will always support my uncle and as a unit, we will ensure that our support is worthy of societal standards." Ex. D. During her interview with the Probation Office, Ivanova Acosta advised that her "family loves [Mr. Acosta] and that it has been difficult for them while [Mr. Acosta] has been incarcerated. She expressed hope that the Court takes this information into consideration when reaching a sentencing decision, and further hoped that the Court may exercise leniency in this case." Report ¶ 53.

II.     NATURE AND CIRCUMSTANCES OF THE OFFENSE

On July 18, 2015, the government filed a complaint against Mr. Acosta alleging a violation of 21 U.S.C. § 841(b)(1)(A). On August 27, 2015, Mr. Acosta was indicted and charged with a narcotics conspiracy in violation of 21 U.S.C. § 841(b)(1)(A). Mr. Acosta has been in custody since on or about July 18, 2015. *See* Report ¶ 7.

Following conversations with the government, it became apparent that Mr. Acosta met the criteria under the Holder Memo, which requires prosecutors not to seek the imposition of a mandatory minimum sentence for certain defendants. As a result, the parties agreed upon a

4

guilty plea to a lesser included (b)(1)(C) offense not requiring the imposition of a mandatory minimum.

On February 4, 2016, Mr. Acosta pled guilty to the lesser included offense of conspiring to distribute and possess with the intent to distribute a quantity of heroin in violation of 21 U.S.C. § 841(b)(1)(C).  *See* Report ¶ 27.  Mr. Acosta was not an organizer, leader, manager or supervisor.  In connection with the conspiracy, the conduct does not involve the use of violence, the threat of violence or the possession of any weapon.  Mr. Acosta's involvement was rather limited in time and scope; in addition, he has no ties to any drug trafficking organization, gang or cartel and received no financial gain as a result of his involvement.

Moreover, Mr. Acosta has never minimized or downplayed his role and promptly accepted full responsibility for his actions.  *See* Report ¶¶ 36-37.  At his plea, Mr. Acosta noted: "I would like to apologize to your Honor.  . . . And I am guilty of the crime that I'm charged with.  I'm sorry."  Transcript from Plea, dated February 4, 2016, at 13:18-25 (the "Tr."), ECF No. 33.  Indeed, the Probation Office notes that Mr. Acosta

> expressed remorse and regret for his actions in the instant offense, and acknowledged his wrongdoing in the course of the offense. The subject was apologetic, and noted that he feels pain given what he has done to his family.

Report ¶ 26.

In addition, Mr. Acosta has written to the Court and reiterated his remorse:

> I accept, acknowledge, and admit my mistake to my family: Viviana Acosta, Nixali, Ivanova [*Acosta*], Gissell [*Acosta*], Maximo [*Acosta*], my son Justin Acosta, Elizabeth Acosta, and the society that you, Judge, represent, the U.S.A.
>
> I am sorry… I am sorry
>
> I ask Your Honor to have compassion and mercy on me; I am prepared to accept any sentence you will impose on me.

5

Ex. A.

## III.    SENTENCING CALCULATIONS AND THE GUIDELINES

In the Report, the Probation Office found that Mr. Acosta had a Total Offense Level of 27, a Criminal History Category of I (0 criminal history points) and a Guidelines range of 70 to 87 months. *See* Report ¶¶ 38, 43-44. Without any analysis, the Probation Office recommended a sentence of 70 months to address "the sentencing objectives of punishment, incapacitation, and general and specific deterrence." Report at p. 22. For the additional reasons set forth below, Mr. Acosta respectfully requests a sentence no greater than 24 months of imprisonment based upon the factors to be considered in imposing a sentence pursuant to 18 U.S.C. § 3553(a).

## **ARGUMENT**

The overriding principle and basic mandate of 18 U.S.C. § 3553(a) requires this Court to impose a sentence "sufficient, but not greater than necessary" to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2): retribution ("to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"); deterrence; incapacitation ("to protect the public from further crimes of the defendant"); and rehabilitation ("to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"). 18 U.S.C. § 3553(a). Here, in this case, a sentence of no more than 24 months of imprisonment is sufficient, but not greater than necessary, to comply with the purposes of sentencing under 18 U.S.C. § 3553(a).

Specifically, a sentencing court must consider several factors listed in Section 3553(a). These factors are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence to carry out the four principles outlined above; (3) the kinds of sentences available; (4) the kinds of sentences and Guidelines range; (5) any pertinent policy statement by the Sentencing Commission; (6) the need to avoid

6

unwarranted sentence disparities among defendants with similar records found guilty of similar conduct; and (7) the need to provide restitution.  *See* 18 U.S.C. § 3553(a)(1)-(7).

With respect to the consideration of the first five of these factors, Mr. Acosta respectfully refers the Court to the detailed information set forth in the Statement of Facts, *supra*, and detailed below.  As for the sixth factor, and the need to avoid unwarranted sentence disparities, Mr. Acosta's co-defendant**,** an individual whom we understand also has pled guilty to the lesser included (b)(1)(C) offense, has had his sentencing adjourned from May 13, 2016 until June 13, 2016.[2]

Mr. Acosta's Explanation for Offense

In his allocution, Mr. Acosta acknowledged: "I have these friends that I've had for approximately 30 years.  And they were in a difficult economic position, as they told me.  He asked me to try to help him.  And I tried to refuse for about a month and a half.  But I gave in.  And I am guilty of the crimes that I'm charged with."  Tr. at 13:20-24.

In the Report, it is noted that Mr. Acosta's "friend approached him for assistance, and [Mr. Acosta] declined to get involved.  His friend reportedly continued to persist and requested that [Mr. Acosta] look for an individual, because [Mr. Acosta] was familiar with many people.  [Mr. Acosta] advised that he finally performed a favor for the friend after refusing to fulfill his requests for approximately more than one-and-a-half months."  Report ¶ 26.

In his letter to the Court, Mr. Acosta explained his involvement:

> On July 17, 2015 or around that time, I was arrested in the Southern District of New York.
>
> ███████████████████████████████████

---

[2] The seventh factor, which relates to restitution, is not relevant to this case.



Ex. A.

While Mr. Acosta's offense is a serious one, it does appear that Mr. Acosta fended off his "persistent" friend for almost two months.  Despite having no money and being a man of very modest means, Mr. Acosta insisted on doing things the right way and repeatedly said "no" to protect his family.  Unfortunately, at some point, he yielded to his friend's repeated overtures.  As a result of involvement, Mr. Acosta has advised that his friend led him "to Hell's doors."

Mr. Acosta's Age

As noted, Mr. Acosta is 51 years old; he is highly unlikely to recidivate.  The Sentencing Commission has determined that "[r]ecidivism rates decline relatively consistently as age increases."  U.S. Sentencing Comm'n, Measuring Recidivism: The Criminal History Computation of The Federal Sentencing Guidelines, at 12 (2004) (the "2004 Commission Report"); *see also* U.S. Sentencing Comm'n, Recidivism Among Federal Offenders: A Comprehensive Overview, at 23 (2016) (the "2016 Commission Report) ("Studies have repeatedly shown that older offenders at sentencing are at lower risk for reoffending, and the Commission's research confirms these findings.").  The recidivism rate for defendants sentenced at age 20 or younger is 51.8%, but that rate drops by over three quarters to 11.9% for defendants sentenced in their forties.  *See* 2016 Commission Report at 49.

A defendant who is sentenced in his fifties and has a Criminal History Category of I, like Mr. Acosta, is even less likely to recidivate than the average fifty-something defendant, with a recidivism rate of 6.2%.  *See* 2004 Commission Report at 28.  Courts therefore regularly

8

consider a defendant's older age as a characteristic that supports imposition of a below Guidelines sentence. *See, e.g., United States v. Calcano*, 98 Cr. 438 (PGG), 2014 WL 148637, at *9 (S.D.N.Y. Jan. 15, 2014) (ordering resentencing to consider non-Guidelines sentence in light of, inter alia, defendant's age of 41 at time of sentencing); *United States v. Ruiz*, No. 04-CR-1146 (RWS), 2006 WL 1311982, at *4 (S.D.N.Y. May 10, 2006) (declining to impose Guidelines sentence on defendant who was "over the age of forty" because older defendants "exhibit markedly lower rates of recidivism"); *United States v. Birkett*, No. 99 CR 338 (RWS), 2006 WL 2819663, at *4 (S.D.N.Y. Oct. 2, 2006) ("With regard to the necessity to protect society from future crimes of the Defendant, this Court and others have previously declined to impose Guidelines sentences on older defendants in light of the Sentencing Commission's conclusion that recidivism rates decline relatively consistently as age increases.") (internal quotation marks omitted); *see also United States v. Hamilton*, 323 F. App'x 27, 31 (2d Cir. 2009) (vacating sentence and remanding for consideration of age-recidivism correlation).

Mr. Acosta's age, in combination with his acceptance of responsibility, strong work ethic and commitment to family, makes it highly unlikely that he will engage in any further illegal conduct after he completes his sentence. In addition, Mr. Acosta recognizes that "his guilty plea and conviction make it very likely that his deportation from the United States is presumptively mandatory." Plea Agreement, dated Dec. 31, 2015, at 5. In sum, a sentence no greater than 24 months of imprisonment would serve as a significant punishment and accomplish the goals of sentencing outlined in 18 U.S.C. § 3553(a), while at the same time taking into account Mr. Acosta's remorse, successful record of employment throughout life and at the MCC and MDC, strong support network and the strong likelihood of deportation.

## **CONCLUSION**

For the foregoing reasons, Mr. Acosta respectfully requests that the Court impose a sentence no greater than 24 months of imprisonment.

Dated:  New York, New York             **SULLIVAN & WORCESTER LLP**
        May 9, 2016

                                               By:   /s/Harry H. Rimm
                                                           Harry H. Rimm

                                           1633 Broadway
                                           New York, New York 10019
                                           Telephone: (212) 660-3000
                                           Facsimile: (212) 660-3001

                                           *Attorneys for Esmeraldo Acosta*

**APPENDIX**

Exhibit A:   Letter from Esmeraldo Acosta

Exhibit B:   Letter from Justin Acosta (Mr. Acosta's son)

Exhibit C:   Letter from Gissell Acosta (Mr. Acosta's niece)

Exhibit D:   Letter from Ivanova Acosta (Mr. Acosta's niece)

Exhibit E:   Letter from Maximo Acosta (Mr. Acosta's nephew)

Exhibit F:   Letter from Viviana Acosta (Mr. Acosta's sister-in-law)

Exhibit G:   BOP Work Performance Ratings from MCC (9/2015 - 1/2016) and Inmate Transaction History Report

Exhibit H:   BOP Work Performance Rating from MDC – 3/2016