**Donald Yannella, P.C.**
**Attorney at Law**
Member of NY & NJ Bars
**233 Broadway, Suite 2370**
**New York, NY  10279**

---

**Tel:  (212) 226-2883**
**Fax:  (646) 430-8379**
**nynjcrimlawyer@gmail.com**

June 8, 2016

Hon. P. Kevin Castel
United States District Court
Daniel P. Moynihan United States Courthouse
500 Pearl Street
New York, NY  10007

    Re:    United States v. Andre Heredia-Cuevas
           15 Cr. 592 (PKC)

Dear Judge Castel:

      I am counsel for Andre Heredia-Cuevas, who pleaded guilty to conspiracy to distribute and possess with intent to distribute heroin, pursuant to 21 USC §§ 846, 841(b)(1)(C).  There is no mandatory minimum term of imprisonment.  Mr. Heredia respectfully requests a downward variance from the low end of the stipulated Guidelines range, which is 70 months.

I.

**History and Personal Characteristics**

      Andre Heredia-Cuevas was born in the Dominican Republic in 1966 and raised in poverty.  His father was a police officer but earned a very low salary, and his mother was a housewife.  The family often lacked adequate food or clothing.  As the oldest of seven children, Mr. Heredia helped care for his siblings and earn money outside the home. He shined shoes and collected recyclables, giving the proceeds to his parents.

      After high school, Mr. Heredia studied Systems Engineering at a college in Santo Domingo for one year.  For financial reasons, he stopped attending without earning a degree.

      Mr. Heredia first came to the United States in 1993, and he spent most of his adult life here.  He worked in construction for almost twenty years.  Mr. Heredia married twice, but both marriages ended in divorce in the 1990's.  Even after the divorce, he maintained a good

relationship with his second wife.  They had twins who are now twelve years old and reside in the Bronx.

Mr. Heredia has been in a relationship with Socorro Aristy for approximately twenty years.  He has one biological child with her, and he is also a father figure to her three other children.  Attached as Exhibit A are five letters from, respectively, Ms. Aristy, three of their children, and a family friend.  Ms. Aristy says in her letter that she has been Andre Heredia's "partner" for twenty years and that she is "the mother of his four children."  She describes him as a "wonderful father to our children, a loving soul mate and friend."

Mr. Heredia's children express affection and admiration for him.  One writes:

> My father is the most caring, generous and kind man that I know. I admire him for all that he does for my family and without him, our family doesn't complete. He is the the person that I would confide in, with any advice that I needed, whether it was school, girls and guy talks.

Another son writes:

> Since a kid my father has been very involved with my academics, sports hobbies, and teaching me moral life lessons. I truly look up to him and his dedication he tend to always look at the brighter side in certain situations. My father knew what it would take to be with us but he still took the the risk , he just didn't want to miss out in the important events of our life. Although he isn't biological father, he has been the only father figure in my life and I have a tremendous amount respect and love for him.

Mr. Heredia's biological child with Ms. Aristy says:

> I remember the times when he would take me out to play basketball and we would head back home and make my favorite dinner, times like these are my favorite. When me and my brother and sister go to visit my dad it makes me sad to see him in the place that he is…

A family friend, Elvira Lucion, has known Mr. Heredia for eighteen years.  She writes:

> He is an excellent person true at heart, he is admired as father, friend  and son. I hope from my heart that he won't be away from his family for a long time, as much as his soulmate dearly need and miss him so do his children.

Although distributing heroin is a serious offense, these letters demonstrate that Mr. Heredia is a dedicated family man.  That aspect of his life should be considered in fashioning an appropriate sentence.

## II.

### The Nature and Circumstances of the Offense

Mr. Heredia's codefendant, Esmeraldo Acosta, started negotiating a drug transaction with the confidential informant on July 13, 2015 at a car dealership in the Bronx. After agreeing to sell heroin to the informant, Mr. Acosta had trouble finding a source of supply. Mr. Acosta contacted Mr. Heredia, who found a source of heroin.

Mr. Heredia brought a sample of heroin to a parking lot in Yonkers on July 16, 2015. It was there that Mr. Heredia first met the confidential informant and an undercover officer. The sample was left in the back seat of a Hyundai sedan, and the undercover took it. Afterward, Mr. Acosta asked the undercover officer to pay $64,000 for a kilogram, but the undercover officer negotiated the price down to $63,000.

The following day, Mr. Acosta arrived in Yonkers in a BMW and spoke to the undercover officer and confidential informant. Mr. Acosta said he was waiting for the kilogram of heroin to be delivered. Mr. Heredia arrived on foot carrying plastic shopping bags. Eventually, the undercover officer retrieved the shopping bag of heroin from the back of the BMW where it had been left. The undercover officer asked Mr. Heredia to count the money. Sensing that he was about to be arrested, Mr. Heredia resisted going with the undercover officer. He was arrested moments later without incident.

## III.

### Just punishment, deterrence, rehabilitation, and the need to provide educational and vocational training, and medical treatment in the most effective manner

Mr. Heredia respectfully requests a sentence of less than 70 months. His motive for attempting to sell a kilogram of heroin was to earn money for his stepdaughter's sweet sixteen party. (PSR § 27). He realizes that this was a very poor choice. Not only did his daughter not get the party, she and her siblings now live without a father figure. In the PSR, United States Probation Officer summarized Mr. Heredia's perspective as follows:

> He informed that he hoped to have a Sweet Sixteen party in [his daughter's] honor, but due to his illicit actions and arrest, he could not even be with her on her birthday. The defendant reflected on the situation and expressed regret and remorse for his actions. He indicated that he feels bad for his actions and now believes that he would have taken different steps. Heredia-Cuevas expressed that his children will miss him, and it appears that he is eager to reunite with his family.
> 
> PSR ¶ 27.

A Guidelines sentence would be excessive. In 18 U.S.C. § 3553(a), Congress mandated that federal sentences be "sufficient, but not greater than necessary" to achieve the sentencing objectives set forth in § 3553(a)(2), namely the traditional goals of retribution, deterrence, incapacitation, and rehabilitation. That statutory provision, which is often called the parsimony clause, is overarching and should take precedence over any provision of the merely advisory Guidelines.

It would be error to presume that the advisory Guidelines range is reasonable. *See Gall* v. *United States,* 552 US 38, 50, 128 S.Ct. 586 (2007); *United States v. Broxmeyer,* 699 F.3d 265, 290 (2d Cir. 2012) (the district court "cannot assume that a Guidelines sentence is warranted in a particular case but, rather, must make an independent sentencing determination,"); *United States v. Cavera,* 550 F.2d 180, 188 (2d Cir. 2008) (the court must form its own view of the "nature and circumstances of the offense and the history and characteristics of the defendant."). The Guidelines are only the "starting point and the initial benchmark." *Gall,* 552 U.S. at 49.

Mr. Heredia's family has suffered financially since his arrest, and they are being evicted. Mr. Heredia earns his own commissary money in order to avoid burdening his family. Attached as Exhibit B is an evaluation of Mr. Heredia's job performance in the Metropolitan Detention Center. Working in the kitchen, Mr. Heredia received the highest grade - outstanding - in the following categories:

> A. Quality of Work;
> B. Quantity of Work;
> C. Initiative;
> D. Interest, Eagerness to Learn;
> E. Ability to Learn;
> F. Need for Supervision, Dependability Safety; Care of Equipment;
> G. Response to Supervision and Instruction; and
> H. Ability to Work with Others.

### IV.

**The Plea Agreement, Sentencing Guidelines, and Presentence Report**

In the plea agreement, the parties calculated the Guidelines as follows:

- Pursuant to U.S.S.G. § 2D1.1, the base offense level for between 1 and 3 kilograms of heroin is 30.

- Pursuant to U.S.S.G. § 3E1.1(a) and (b), for timely acceptance of responsibility, a three level reduction will be warranted.

- With zero criminal history points, the Criminal History Category is I.

- Mr. Heredia's stipulated Guidelines range is 70 to 87 months' imprisonment.

The PSR contains identical calculations and recommends a sentence at the low end of the stipulated Guidelines range: 70 months' imprisonment.

## Conclusion

Mr. Heredia accepts responsibility for his crime and expresses remorse, as indicated in his statement to the Probation Department. He is indigent and cannot afford to pay a fine.

Mr. Heredia needs continuing medical attention for diabetes, which he has had since 2006.

The Government correctly points out that heroin is extremely addictive and has causes a staggering number of deaths in the United States each year. For distributing heroin, Mr. Heredia deserves to be punished. However, a 70 month sentence would be excessive. We respectfully request some downward variance.

Sincerely,

/s/

Donald J. Yannella, Esq.

# EXHIBIT A

Dear honorable judge P. Kevin Castel,

    I Socorro Aristy am the partner of Andres heredia, we have been together for 20 years and the mother of his four children. He has been a wonderful father to our children, a loving soul mate and friend. I hope you take this letter to consideration to make the best decision , giving him another opportunity with a considerate time so that he cannot continue to miss out on important events his his children's lives. Thank you for your time.

                                            Sincerely yours,

                                            Socorro Aristy

Dear honorable P. Kevin Castel,

My name is ███████████, I'm the oldest son of Andres heredia. I would describe my father as a noble man that only wants what's best for his family. Since a kid my father has been very involved with my academics, sports hobbies, and teaching me moral life lessons. I truly look up to him and his dedication he tend to always look at the brighter side in certain situations. My father knew what it would take to be with us but he still took the the risk , he just didn't want to miss out in the important events of our life. Although he isn't biological father, he has been the only father figure in my life and I have a tremendous amount respect and love for him. I hope that one day I can be half the man that he is. I believe that my father deserves another opportunity to make the right decisions. As a young adult I can now view things from my father's perspective, I understand that when you have a family you are willing to do anything to keep the family united. I want you to understand that my father's intentions were genuine and to do nothing but provide and protect the family that he loves and raised here in America. I hope you take this letter to consideration thank you, your honor.

Truly yours,



Dear Honorable P. Kevin Castel,

    My name is ███████████ I'm referring to my father Andres Heredia. My father is the most caring, generous and kind man that I know. I admire him for all that he does for my family and without him, our family doesn't complete. He is the the person that I would confide in, with any advice that I needed, whether it was school, girls and guy talks. I truly hope that you will take this letter into consideration when making the decision for my father.

                                                                   Truly yours,

                                                                   ███████████

Dear Honorable judge P. Kevin Castel,

   I'm ███████████, I am 11 years old. I'm referring to Andres Heredia my father. I miss him dearly. I love him so much, he inspire me to be an honor student in school. The feeling of him being home makes me warm and happy in the inside and outside. I remember the times when he would take me out to play basketball and we would head back home and make my favorite dinner, times like these are my favorite. When me and my brother and sister go to visit my dad it makes me sad to see him in the place that he is, he doesn't deserve that. Throughout the 11 years with him he's been such a wonderful father and wise teacher to me. I hope it won't be long until he can come back home. I deeply appreciate that you take your time in considering my letter.

                                                                Truly yours,

                                                                ███████████

Dear P Kevin castel,

        My name is Elvira Lucion a close family friend of Andres heredia for 18 years. He is an excellent person true at heart, he is admired as father, friend and son. I hope from my heart that he won't be away from his family for a long time, as much as his soulmate dearly need and miss him so do his children. Thank you so much for your time, please take this to consideration.

                                            Yours Truly,

                                            Elvira Lucion

# EXHIBIT B

WORK PERFORMANCE RATING - INMATE

U.S. DEPARTMENT OF JUSTICE                    FEDERAL BUREAU OF PRISONS

| Inmate's Name: HEREDIA, ANDRE | Register No. 72543-054 | Unit HB |
|---|---|---|
| Evaluation MAR 26- APRIL 25 | Work Assignment: FOOD SRV 2 | |

Bonus Justification  *Hardworker.*
*Always wants to learn, get Job Done.*

Signature and Date of Dept. Head Approval

Route to Dept. Head for Review, Then to Unit Team

Instructions: Check the best statement in each area. Base your rating on the inmate's overall performance for the rating period--neither the inmate's best day nor worst day--as compared to what is expected of a satisfactory worker in the assignment.

**A. QUALITY OF WORK**
___1. Unsatisfactory. Makes more errors than should for this level of training. Work must be redone.
___2. Fair. Careless; makes mistakes and does not check work. Should do better work.
___3. Satisfactory. Makes some mistakes but no more than expected at this level.
___4. Good. Makes fewer mistakes than most inmates at this level of training. Does Journeyman level work.
_✓_5. Outstanding. Does superior work

**B. QUANTITY OF WORK**
___1. Unsatisfactory. Lazy, wastes time, goofs off.
___2. Fair. Does just enough to get by. Has to be prodded occasionally.
___3. Satisfactory. Works steadily but does not push self.
___4. Good. Willing Worker. Does a full day's work and wastes little time.
_✓_5. Outstanding. Drives self exceptionally hard all the time.

**C. INITIATIVE**
___1. Unsatisfactory. Always waits to be told what to do. Needs help getting started.
___2. Fair. Usually relies on others to say what needs to be done.
___3. Satisfactory. Can adapt to changes in routine. Will start work without waiting to be told.
___4. Good. Can plan own work well. Acts on own in most things. Doesn't wait to be told what to do.
_✓_5. Outstanding. Has good ideas on better ways of doing things.

**D. INTEREST; EAGERNESS TO LEARN**
___1. Poor. Shows no interest in job. Regards job as a drag or waste of time.
___2. Fair. Shows minimal interest but not very eager to learn.
___3. Satisfactory. Shows average amount of interest. Wants to learn own job but does not put forth extra effort.
___4. Good. Above-average interest in job. Asks questions about own work and related work. May do extra work to improve skills.
_✓_5. Outstanding. Eager to master job. Wants to know everything there is to know about it. May read up on own time or volunteer to do things that will improve knowledge.

**E. ABILITY TO LEARN**
___1. Poor. Has very low aptitude and is very slow to learn. Even when given extra instruction unable to learn, No matter how hard trying.
___2. Fair. Slow but if tries eventually will pick up the skills. Needs more instructions than most.
___3. Average. No slower and no faster to learn than most inmates. Requires average amount of instruction.
___4. Good. Learns rapidly. Good memory. Rarely makes the same mistake twice.
_✓_5. Outstanding. Very quick to learn. Excellent memory. Is learning much more rapidly than most inmates assigned here. Never makes the same mistake twice.

**F. NEED FOR SUPERVISION; DEPENDABILITY; SAFETY; CARE OF EQUIPMENT**
___1. Needs constant supervision. If left unsupervised will foul up, get in trouble, or wander off. Undependable.
___2. Needs closer supervision than most. Not very dependable.
___3. Average. Can be relied on for certain things but must be supervised by others. Usually prompt and dependable.
___4. Needs little supervision. Good record of dependability an promptness.
_✓_5. No supervision required. Completely dependable in all things.

G. RESPONSE TO SUPERVISION AND INSTRUCTION
___1. Poor. Resentful and hostile. May argue with supervisor.
___2. Fair. Resists or ignores suggestions.
___3. Satisfactory. Generally does what is told without any fuss.
___4. Good. No hostility or resentment. Tries to improve.
___5. Outstanding. Makes a real effort to please the instructor. Does exactly as is told.

H. ABILITY TO WORK WITH OTHERS
___1. Poor. Negativistic, hostile, annoying to others.
___2. Fair. Doesn't make friends easily. Has some interpersonal difficulties.
___3. Satisfactory. Gets along OK with most co-workers and is accepted by them.
___4. Good. Friendly, congenial, helpful; others like to work with.
___5. Outstanding. Gets along well with everyone. Very popular.

I. OVERALL JOB PROFICIENCY
Based on this inmate's overall performance during this work period, if this inmate was an employee of yours in the community would you:

___1. Fire or lay off that individual?
___2. Transfer the person to a less demanding job at a lower pay scale?
___3. Continue to employ the person but without a raise or promotion this time?
___4. Raise the person's pay but keep the person at the same job?
___5. Promote the person to a more demanding job at a higher pay rate?

J. GRADES AND PAY
1. Performance Pay - Grade Class (Check one) ___ 1  ___ 2  ___ 3  _X_ 4  ___ M.
2. Hours of Satisfactory work _____154_____ .
3. Regular Pay _____ .          18.48
4. Bonus Recommended: _X_ yes; ___ no   9.24
5. Total Pay _____ . _____  27.72

| Supervisor's Signature | Date 4/25/15 |
| --- | --- |
| Inmate's Signature | Date 4/25/15 |

Inmate _Andul Heredia_ was requested to sign this rating, but refused, citing the following reason:

| Staff Witness' Signature | Date |
| --- | --- |

FILE IN SECTION 4 UNLESS APPROPRIATE FOR PRIVACY FOLDER

## PERFORMANCE PAY DAILY RECORD - INMATE

| SUNDAY | MONDAY | TUESDAY | WEDNESDAY | THUSDAY | FRIDAY | SATURDAY |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  | 26 |
|  |  |  |  |  |  | 7 |
| 27<br>7 | 28<br>7 | 29<br>7 | 30<br>OFF | 31<br>OFF | 1<br>7 | 2<br>7 |
| 3<br>7 | 4<br>7 | 5<br>7 | 6<br>OFF | 7<br>OFF | 8<br>7 | 9<br>7 |
| 10<br>7 | 11<br>7 | 12<br>7 | 13<br>OFF | 14<br>OFF | 15<br>7 | 16<br>7 |
| 17<br>7<br>24<br>7 | 18<br>7<br>25<br>7 | 19<br>7 | 20<br>OFF | 21<br>OFF | 22<br>7 | 23<br>7 |

Note: For days reflecting less than 7 hours worked explain by inserting applicable code:

C= Call Out          V= Visit              AD= Admin.Det/Discip. Seg
E= Education         HO= Holiday           VC= Vacation
F= Furlough          I= Medical Idle       U= Unsatisfactory
H= Hospital          UA= Unauthorized      RS= Religious Services

| INMATE'S NAME: HEREDIA, ANDRE | REG: 72543-054 | DETAIL: FS 2 |
|---|---|---|
| MONTH: MAR 26- APRIL 25 | TOTAL HOURS: 154 | |